5:20mj1077

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Benjamin Taylor, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I have been employed by the Medina County Sheriff's Office since 2015. I previously worked for the Athens County Sheriff's Office as Reserve Deputy Sheriff for two years. I also have a Bachelor's degree majoring in Criminology and Sociology. I have completed in excess of 600 hours of training as prescribed by the Ohio Peace Officer Training Academy (OPOTA).  I am presently assigned to HSI Cleveland as a Task Force Officer, where I routinely investigate violations of federal statutes, to include violations of firearms, narcotics, financial and export laws.

2. As a result, I am experienced in the means and methods used by persons and drug trafficking organizations to purchase, transport, store, and distribute contraband and the means and methods used to hide profits generated from those transactions.  I have written and/or participated in the execution of federal and state search warrants involving, illegal exports, violent crime, illegal firearms possession, and the use and trafficking of narcotics and narcotics smuggling.

3. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7) and am authorized under the Federal Rules of Criminal Procedure, Rule 41, to request an arrest warrant.

4. I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish the necessary foundation for an order authorizing the arrest of Timothy WINGFIELD.

5. I submit the facts set forth above establish probable cause to believe that in the State and District of Northern of Ohio on or about March 3, 2020, the defendant, Timothy WINGFIELD, did knowingly possess with intent to distribute a controlled substance, to wit methamphetamine and cocaine, in violation of 21 U.S.C. § 841. Accordingly, I request the issuance of a criminal complaint and arrest warrant.

## FACTS OF THE INVESTIGATION

1. On March 3, 2020, the affiant, Deputy Benjamin Taylor, assigned to HSI Cleveland as a Task Force Officer, received permission from the bus driver of a Greyhound bus, parked at the Greyhound bus station, located at 613 S Broadway St, Akron, OH, 44311, to board the bus and speak to passengers on the bus. Deputy Taylor walked to the rear of the bus, and observed an individual, covering himself with a jacket, later identified as Timothy WINGFIELD, hereafter referred to as WINGFIELD, sitting in the rear most driver's side seat of the bus.

2. Deputy Taylor approached WINGFIELD and made contact with him, asking him where he was coming from today. WINGFIELD advised he was traveling from Michigan. When Deputy Taylor asked WINGFIELD where he was headed to, WINGFIELD repeated Deputy Taylor's question, and then advised he was heading to Morgantown, West Virginia. Deputy Taylor asked WINGFIELD why he was traveling to West Virginia, and WINGFIELD repeated the question again, answering that he was going to see his grandmother. Deputy Taylor asked WINGFIELD why he was traveling to see his grandmother. WINGFIELD repeated this question, and WINGFIELD then answered, advising she was sick. Deputy Taylor asked what illness WINGFIELD'S grandmother was suffering from. WINGFIELD again repeated the question, followed by answering that she had cancer, and had it for approximately 1 month.

3. After this initial line of questioning, Deputy Taylor observed a gray bag sitting next to WINGFIELD, on a shelf level with WINGFIELD's seat, that occupied the space between WINGFIELD and separated area of the bus. Deputy Taylor asked WINGFIELD if the bag was his, and WINGFIELD advised it was. Deputy Taylor asked WINGFIELD if WINGFIELD would permit him to search the bag, and WINGFIELD advised Deputy Taylor that he could search the bag, removing the contents of the exterior of the bag to be viewed by Deputy Taylor. Deputy Taylor then opened the top of the bag, and

2

observed a glass jar with a substance that Deputy Taylor suspected was marijuana sitting inside. In further inspection of the contents of the bag, Deputy Taylor observed another jar containing suspected marijuana. Without prompting, WINGFIELD advised Deputy Taylor that both containers containing the suspected marijuana were his; and also advised Deputy Taylor that it was what WINGFIELD considered to be a small amount of marijuana. Sitting next to the second jar, was a black package, wrapped in a black plastic substance. Due to Deputy Taylor's prior training an experience, Deputy Taylor immediately recognized this packaging to be a style and manner similar to that used for the packaging of bulk amounts of narcotics or controlled substances. Deputy Taylor continued to look into the bag, and saw that there were additional packages wrapped in black plastic.

4. At this time, Deputy Taylor advised WINGFIELD of his Miranda Rights, which WINGFIELD advised he understood. Deputy Taylor asked WINGFIELD for consent to pat him down, and WINGFIELD consented. Deputy Taylor then advised Deputy Gibbons, also assigned as a Task Force Officer through HSI Cleveland, of the contents of the bag. At this time, Deputy Gibbons and Taylor escorted WINGFIELD off of the bus, to a room inside the bus terminal, away from other individuals.

5. Once inside this room, Deputy Gibbons, again asked WINGFIELD to ensure he had given consent for the bag to be searched, and WINGFIELD confirmed to Deputy Gibbons that he had provided Deputy Taylor consent to search the bag. In total, Deputy Taylor removed four packages wrapped in a black plastic, two smaller clear bags containing a rocklike substance, and the two jars containing suspected marijuana.

6. Deputy Gibbons began opening one of the black packages with a knife, and in doing so, detected a substance he believed to be petroleum jelly between the layers of plastic. It should be noted that also inside of the grey bag, was an emptied container of petroleum jelly. Deputy Gibbons ultimately accessed the contents of the package, which presumptively tested positive for the presence of ampethamines.

7. At this time, Deputy Gibbons sat down with WINGFIELD, and again advised him of his Miranda Rights. WINGFIELD advised he understood his rights, but did not wish to speak to Deputies any more, and then advised he had an attorney to contact. Following this, Deputy Taylor returned to the Medina County Sheriff's Office, and collected photographs and weights of the four black packages and two smaller clear packages. In total, the four black packages weighed approximately 2146.5 grams. The two smaller bags, containing suspected crack cocaine, weighed approximately 48 grams in total.

8. I submit the facts set forth above establish probable cause to believe that in the State and District of Northern Ohio on or about March 3, 2020, the defendant, Timothy WINGFIELD, did knowingly possess a controlled substance in violation of 21 U.S.C. § 841(a)(1), 841 (b)(1)(A)(viii) (Possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine). Accordingly, I request the issuance of a criminal complaint and arrest warrant.



BENJAMIN TAYLOR
TASK FORCE OFFICER
IMMIGRATION AND CUSTOMS ENFORCEMENT
U.S. HOMELAND SECUTIY INVESTIGATIONS

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Crim. R. 4.1, on this ___4th___ day of March, 2020.



Kathleen B. Burke, U.S. Magistrate Judge